UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES C. MYERS,

              Plaintiff,              CIVIL ACTION NO. 11-14614

        v.                       MAGISTRATE JUDGE MARK A. RANDON

COMMISSIONER OF
SOCIAL SECURITY,

              Defendant.
_____/

**OPINION AND ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NOS. 9 and 10)**

## I.    PROCEDURAL HISTORY

### A.    *Proceedings in this Court*

On October 20, 2011, Plaintiff filed suit seeking judicial review of the Commissioner's

decision to deny him social security benefits before September 1, 2010.  (Dkt. No. 1).  On April

13, 2012, the parties consented to this Magistrate Judge's review of the Commissioner's decision

and entry of final judgment.  (Dkt. No. 11).  Cross-motions for summary judgment are pending.

(Dkt. Nos. 9, 10).

### B.    *Administrative Proceedings*

Plaintiff applied for disability and disability insurance benefits on August 7, 2009,

alleging a disability onset date of February 15, 2007.[1]  (Tr. 11).  Plaintiff also applied for

supplemental security income on June 18, 2009, alleging a disability onset date of February 15,

---

[1] Plaintiff later acknowledged working full-time between December 2006-March 2008.  (Tr. 135).  Thus, his actual alleged disability onset date should be April 2008.

2007.  (Tr. 11).  Plaintiff's claims were initially denied by the Commissioner on October 21,

2009.  (Tr. 11).  On January 25, 2011, Plaintiff appeared with counsel for a video hearing before

Administrative Law Judge ("ALJ") Theodore W. Grippo, who considered the case *de novo*.  On

May 27, 2011, the ALJ issued a partially favorable decision:  Plaintiff was disabled as of

September 1, 2010, but not before that date.  (Tr. 11-19).  Plaintiff requested a review of this

decision.  (Tr. 1).  On September 16, 2011, the ALJ's decision became the Commissioner's final

decision when the Appeals Council denied Plaintiff's request for further review.  (Tr. 1-3).

In light of the entire record, this Magistrate Judge finds that substantial evidence supports

the Commissioner's determination that Plaintiff was not disabled before September 1, 2010.

Accordingly, Plaintiff's motion for summary judgment is **DENIED**, Defendant's motion for

summary judgment is **GRANTED**, and the Commissioner's findings are **AFFIRMED**.

## II.   STATEMENT OF FACTS

### A.   *ALJ Findings*

In analyzing Plaintiff's claim, the ALJ applied the five-step disability analysis and found

at step one that Plaintiff had not engaged in substantial gainful activity.  (Tr. 13).

At step two, the ALJ found Plaintiff had the following "severe" impairments: herniated

nucleus pulposus of the lumbar spine[2] and status-post myocardial infarcation[3] with angioplasty

and stenting.[4]  (Tr. 13).

---

[2]Commonly known as a herniated disc.

[3]Commonly known as a heart attack.

[4]Angioplasty is a procedure used to open clogged arteries by temporarily inserting and blowing up a tiny balloon where the artery is clogged.  A stent is a small wire mesh tube inserted to help keep the artery open and decrease the chance of future narrowing.  *See, e.g.*, www.mayoclinc.com/health/angioplasty/MY00352 (last visited November 19, 2012).

At step three, the ALJ found no evidence that Plaintiff had an impairment or combination of impairments that met or medically equaled one of the listed impairments in the regulations. (Tr. 13-14).

Between steps three and four, the ALJ found that prior to September 1, 2010 (the date the ALJ determined Plaintiff was disabled), Plaintiff had the Residual Functional Capacity ("RFC") to perform the full range of light work. (Tr. 14). Beginning September 1, 2010, Plaintiff had the RFC to perform:

> sedentary work . . . except: [Plaintiff] is unable to lift greater than five to ten pounds; [Plaintiff] must lay[sic] down at least once per hour in an eight-hour workday; [Plaintiff] must be limited to minimal ambulation; [Plaintiff] is limited to occasional sitting; and, [Plaintiff] requires the option to sit or stand at will.

(Tr. 16).

At step four, the ALJ found that, before September 1, 2010, Plaintiff could perform his past relevant work as a construction sales representative, jewelry sales representative, automotive sales representative, and mortgage lender. Accordingly, the ALJ found Plaintiff was not disabled before September 1, 2010. (Tr. 17). The ALJ found that beginning September 1, 2010, Plaintiff could not perform his past relevant work. (Tr. 18).

At step five, the ALJ found that beginning September 1, 2010, Plaintiff could not perform any jobs in the national economy; therefore, he was disabled as of that date. (Tr. 18).

**B.    Administrative Record**

**1.    Plaintiff's Testimony & Statements**

Plaintiff testified at the administrative hearing that he is unable to work because he has "extreme back pain," and he had a heart attack in March or April of 2009. (Tr. 33-34). Plaintiff has pain in the right side of his back that radiates down through his knee. (Tr. 33). On Plaintiff's

left side, he has back pain that radiates down to his foot and causes numbness in his left foot. (Tr. 33). Unless he takes a sleeping pill, Plaintiff wakes up at night in pain. (Tr. 39).

Plaintiff testified that he cannot stand longer than 30 minutes; he can only sit for 30-45 minutes, walk two city blocks and lift 5-10 pounds. (Tr. 35-37). Plaintiff uses a cane to get up and sit down. (Tr. 36).

On a typical day, Plaintiff lies down at home and reads, watches television, listens to music, or does artwork. (Tr. 35, 38-39). He has lived with his parents for the last three years. (Tr. 38). His mother cooks and cleans. (Tr. 38). Plaintiff said that he does not do laundry, cut grass, shovel snow, or shop (Tr. 38), but he can drive (although he had not driven in the month before the hearing, due to pain). (Tr. 37-38).

### 2.    Medical Evidence

Plaintiff developed recurrent right leg pain, and on April 17, 2008, visited Dr. Kevin Lee. He had normal motor strength, and his sensation was intact. (Tr. 336). On April 24, 2008, Dr. Lee prescribed physical therapy for Plaintiff three times per week for two months. (Tr. 346).

On July 3, 2008, Plaintiff reported that his leg pain was more severe, and he had difficulty sitting. Dr. Lee ordered a lumbar transforaminal injection[5] procedure and a lumbar spine MRI. (Tr. 335). On July 10, 2008, Plaintiff reported that the lumbar transforaminal procedure did not improve his leg pain. (Tr. 334).

On July 11, 2008, Plaintiff was diagnosed with posterior disc herniation at level L4-L5, which was eccentric to the left, causing mild central canal stenosis and bilateral neuroforaminal

---

[5]A steroid injection for lumbar radicular pain due to disc herniation. *See, e.g.*, www.sciencedaily.com/releases/2010/07/100730074304.htm (last visited November 19, 2012).

narrowing.  He also had a disc herniation to the right at the L5-S1 level, causing severe right-sided neuroforaminal narrowing and impingement of the right S1 nerve.  (Tr. 205).

On July 17, 2008, Plaintiff indicated he had right posterior leg pain that became worse upon bending.  Dr. Lee directed Plaintiff to undergo another lumbar transforaminal injection procedure.  (Tr. 333).  Plaintiff had a lumbar transforaminal injection on July 22, 2008 that provided "good relief" of his leg pain.  (Tr. 331).

On November 24, 2008, Plaintiff developed pain in his back after re-injuring it a couple of weeks earlier.  He also had pain in his right buttock that radiated to his thigh.  Dr. Lee prescribed Vicodin ES, Flexeril (a muscle relaxant), and Motrin as well as physical therapy.  He recommended another lumbar transforaminal injection procedure.  (Tr. 331-332).

In December 2008, Plaintiff had a lumbar transforaminal injection procedure that resolved his back and leg pain.  (Tr. 329-330).

On May 11, 2009, Plaintiff complained of neck and shoulder pain.  He reported that he had to stay off his feet for a few days every several weeks, but his back and leg pain was under control.  Dr. Lee prescribed Flexeril and Vicodin ES.  (Tr. 329).

On July 1, 2009, Plaintiff reported that he developed "horrible back pain."  According to Plaintiff, he had trouble rolling over in bed, lifting caused significant pain, and standing and sitting for prolonged periods of time caused pain.  Plaintiff did yard work, which may have exacerbated his symptoms.  Dr. Lee recommended a lumbar transforaminal injection procedure and prescribed physical therapy three times per week for 1-2 months.  (Tr. 328, 345).

On September 28, 2009, Plaintiff complained of pain in his buttocks that radiated into the back of his right leg.  Dr. Lee indicated Plaintiff had been "quite active," which may have caused the pain.  Dr. Lee recommended a right S1 selective nerve root block and prescribed Flexeril,

Vicodin ES, and a lumbar support to use while driving.  Plaintiff noted a significant benefit from the lumbar transforaminal injection procedure he had in July 2009.  (Tr. 355).

On October 26, 2009, Plaintiff continued to have pain in his right buttock that radiated down to his thigh.  Dr. Lee ordered a percutaneous discectomy[6] procedure at L5/S1 on the right. (Tr. 357).

On June 21, 2010, Plaintiff's back pain had improved to the point that it was only "minimally bothersome."  Plaintiff had been swimming and "working a lot."  He planned to "hold off" on his disability application.  (Tr. 358).

In September 2010, Plaintiff reported back spasms when he moved.  He had left-side back pain radiating to the gluteal area.  However, his core strength had improved, and he had been swimming and exercising.  Dr. Lee ordered another lumbar transforaminal injection procedure.  (Tr. 359).

On January 3, 2011, Dr. Lee completed an RFC Medical Questionnaire; he indicated that Plaintiff could not lift more than 5-10 pounds, needs to lie down at least once per hour, cannot sit for a prolonged period of time, and needs frequent breaks to lie down or change positions.  (Tr. 372-373).

On June 28, 2011, Dr. Lee clarified that the restrictions identified in the January 3, 2011 Questionnaire actually applied to Plaintiff as far back as April 17, 2008.  (Tr. 445).  However, this evidence was only submitted to the Appeals Council and is not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).

_____

[6]Surgery to remove herniated disc material that is pressing on a nerve root or the spinal cord.  *See e.g*, http://www.webmd.com/back-pain/percutaneous-discectomy-for-a-herniated-disc (last visited November 19, 2012).

### 3.      Vocational Expert

During the hearing, the ALJ asked a vocational expert ("VE") to assume a hypothetical individual who is the same age as Plaintiff, and has the same educational and vocational background as Plaintiff.  The individual can lift no more than 5-10 pounds, and needs to lie down at least once per hour.  In addition, the individual can only engage in minimal walking, needs a sit/stand option, and is only able to sit occasionally.  (Tr. 42-43).  The VE testified that such an individual would be precluded from work.  (Tr. 43).

### C.      *Plaintiff's Claim of Error*

Plaintiff argues that the ALJ's decision is not supported by substantial evidence in the record and is contrary to the Social Security Act, because the medical evidence shows he did not have the capacity to perform light work between April 17, 2008[7] and September 1, 2010.

## III.   DISCUSSION

### A.      *Standard of Review*

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *See Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a government agency makes the initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *See Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court.  *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

---

[7]Plaintiff initially alleged a disability onset date of February 15, 2007.  In his Motion for Summary Judgment, he amended that date to April 17, 2008.  (Dkt. No. 9 at 2).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility") (internal quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely

because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen*, 800 F.2d at 545).

The scope of this Court's review is limited to an examination of the record only. *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

**B.     *Governing Law***

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 CFR § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is

-10-

conclusively presumed to be disabled regardless of age, education
or work experience.

Step Four:  If the claimant is able to perform his or her past
relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past
relevant work, if other work exists in the national economy that the
claimant can perform, in view of his or her age, education, and
work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 CFR §§

404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding

at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of

limitations caused by his impairments and the fact that he is precluded from performing his past

relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the

analysis reaches the fifth step without a finding that the claimant is disabled, the burden shifts to

the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the

fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in

the national economy that [claimant] could perform given his RFC and considering relevant

vocational factors."  *Rogers*, 486 F.3d at 241; 20 CFR §§ 416.920(a)(4)(v) and (g).

## C.    *Analysis and Conclusions*

Plaintiff's overarching argument is that the record does not support the ALJ's conclusion

that he had the RFC to perform light work between April 17, 2008 – his amended disability onset

date – and September 1, 2010.

The ALJ stated:

The undersigned finds [Plaintiff's] allegations partially credible.  The record
clearly establishes a history of disc herniation with nerve root impingement.  The
evidence of record, however, indicates [Plaintiff] retains the physical capacity to

-11-

perform light work from the alleged onset date through September 1, 2010.  First, [Plaintiff] neither sought nor required medical treatment for low back pain prior to April 17, 2007[8], over fourteen months after the alleged disability onset date.  The delay in seeking treatment tends to indicate that any symptoms were not as limiting as alleged during this period.  While objective diagnostics showed disc herniation at the L4-L5 and L5-S1 levels, [Plaintiff] performed activities that are inconsistent with the alleged level of physical functioning.  For example, on July 1, 2009, [Plaintiff] reported that he was doing yard work.  Similarly, on September 28, 2009, [Plaintiff] stated he has been quite active.  Finally, on June 21, 2010, [Plaintiff] reported that he had been swimming, working "a lot," and doing well.  On or about September 1, 2010, however, [Plaintiff] reinjured his low back while caulking his parents' bathtub, which required being transported to the emergency department via ambulance.  Accordingly, from the alleged disability onset date through September 1, 2010, [Plaintiff] retained the ability to perform work consistent with a light exertional capacity.

(Tr. 16).  According to Plaintiff, his sporadic ability to work does not mean he is capable of performing light work.  *See* SSR 96-8p ("RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule").

Pursuant to 20 CFR §404.1567(b):

[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting and carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

*See also* SSR 83-10 ("the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday").

---

[8]This date should be April 17, 2008.

The Court finds Plaintiff performed more than sporadic work: (1) from January 2009 until February 6, 2009, Plaintiff worked in the auto repair business for eight hours a day, five days per week (Tr. 135); (2) from 1992 until August 2008, Plaintiff worked in the construction business six hours a day, five days per week (Tr. 135); (3) on April 16, 2009, Plaintiff reported he was a builder/realtor (Tr. 303); (4) on May 11, 2009, Plaintiff reported he was doing light work as a handyman (Tr. 329); and (5) on February 24, 2010, Plaintiff again reported he was a realtor.  (Tr. 393).  This is evidence that Plaintiff was not disabled between April 17, 2008 and September 1, 2010.  *See* 20 CFR §404.1571:

> [t]he work, without regard to legality, that you have done during any period in which you believe you are disabled may show that you are able to work at the substantial gainful activity level.  If you are able to engage in substantial gainful activity, we will find that you are not disabled.  Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did.  We will consider all of the medical and vocational evidence in your file to decide whether or not you have the ability to engage in substantial gainful activity.

In addition, Plaintiff visited Dr. Lee on April 17, 2008.  Following that visit, he did not seek medical attention until approximately three months later – in July 2008.  On July 22, 2008, Plaintiff had a lumbar transforaminal injection that provided "good relief" of his leg pain, and Plaintiff did not seek medical attention again until approximately four months later – in November 2008.  His pain again relieved in December 2008 after a lumbar transforaminal injection procedure, and he did not develop pain again until July 2009.  Plaintiff had another lumbar transforaminal injection procedure in July 2009, which provided relief until September 2009. As of October 2009, Plaintiff's leg and back pain were under control until he re-injured his back in September 2010.  "A medical condition that can be controlled by treatment is not disabling." *Warford v. Bowen*, 875 F.2d 671, 673 (8th Cir. 1989).  As shown by the medical

records, Plaintiff's alleged disabling conditions of back and leg pain were controlled with

injection procedures and medication.

Accordingly, the Court finds substantial evidence supports the ALJ's decision that

Plaintiff was not disabled between April 17, 2008 and September 1, 2010.

**IV.     CONCLUSION**

Based on the foregoing, Plaintiff's motion for summary judgment is **DENIED**,

Defendant's motion for summary judgment is **GRANTED**, and the Commissioner's findings are

**AFFIRMED**.

**IT IS ORDERED**.

s/Mark A. Randon
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated:  November 27, 2012

*Certificate of Service*

*I hereby certify that a copy of the foregoing document was served on the parties of record on this
date, November 27, 2012, by electronic and/or first class U.S. mail.*

*s/Melody R. Miles*
*Case Manager to Magistrate Judge Mark A. Randon*
*(313) 234-5542*